# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 25, 2011

No. 10-50114

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

ALAN RAY STEEN,

Defendant – Appellant

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PER CURIAM:

Alan Ray Steen appeals his jury conviction for one count of production of child pornography for video he surreptitiously recorded in a tanning salon, while the subject of the video was unaware of the filming. Steen was sentenced to the statutory minimum of fifteen years in a federal correctional facility. As we will explain, Steen did not violate the statute he was charged with offending. We therefore REVERSE Steen's conviction.

No. 10-50114

I.

Steen frequented the Electric Sun Tanning Salon in Odessa, Texas, where an employee would assign him to a room for his tanning session. Because of the heat generated by the equipment, the salon's walls did not reach the ceiling between tanning rooms. When standing on a chair, Steen could not see over the walls but was able to hold a camera on top of the wall partition and film activity in the rooms adjacent to him.[1] On April 3, 2009, Steen filmed C.B., who began tanning next door. The video displayed C.B. for about fifteen seconds as she adjusted the machine settings and entered the tanning bed. Most of the video displayed her back and hair, though her pubic region was visible on the right edge of the frame for approximately 1.5 seconds before she closed the tanning bed.[2]

On April 13, 2009, Steen returned to the salon and entered a tanning room to which he was not assigned. Steen began filming an adult female patron, K.S., who was nude in the adjacent room. While applying tanning lotion, K.S. glanced up to the wall partition and saw Steen's camera. She screamed, and the salon owner rushed to investigate. Steen exited the tanning room, with his shirt untucked and his shoes untied. The salon owner called the police, and Steen confessed to having filmed K.S. He showed the officer his camera and was arrested for videotaping without consent in violation of Texas law. Later, investigators found other videos on Steen's camera, including the April 3 video

---

[1]The camera's viewfinder offered a postage-stamp sized image of what was being filmed.

[2]For a full description of the C.B. video, please see the Appendix.

2

No. 10-50114

of C.B.  Steen was facing state felony charges for video voyeurism,[3] but when investigators identified C.B. and learned she was sixteen-years-old at the time she was filmed, the United States prosecuted Steen under the federal child pornography law.

The federal law, 18 U.S.C. § 2251(a), punishes "[a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . ."  The statute defines "minor" as any person under the age of eighteen.[4]  "Sexually explicit conduct" is defined as intercourse, bestiality, masturbation, sadistic or masochistic abuse, or a "lascivious exhibition of the genitals or pubic area of any person."[5]  The parties agreed that Steen's film did not depict any of the first four items and thus focused on lasciviousness.

At trial, Steen moved for an instructed verdict, asserting the evidence was insufficient to prove beyond a reasonable doubt that the conduct filmed was sexually explicit or lascivious.  The district court denied the motion, and a jury found Steen guilty of one count of production of child pornography.

Steen had no prior criminal history; a forensic examination of Steen's computers found multiple adult pornographic images but no images of children.

---

[3]*See* Tex. Penal Code § 21.15.  This state felony is punishable by jail time between 180 days and two years.  Steen was charged with two counts, which were pending at the time of Steen's federal trial and being prosecuted by the Ector County District Attorney's office.

[4]The scienter requirement of § 2251(a) has not been discussed by courts in the context of voyeurs and child pornography production. *Cf. United States v. X-Citement Video, Inc.*, 513 U.S. 64, 77 n.5 (1994); *United States v. U.S. Dist. Ct.*, 858 F.2d 534, 543 (9th Cir. 1988).  While there was no evidence that Steen knew C.B. was a minor—sixteen, not eighteen—Steen did not offer a lack of knowledge of minority in defense.  We need not, hence do not, discuss the issue here.

[5]18 U.S.C. § 2256(2)(A).

3

No. 10-50114

There was no evidence that the tanning salon video footage had been uploaded to Steen's computer, nor was there any evidence, or allegation, that Steen had distributed any images. Steen was sentenced to fifteen years in a federal corrections center, the mandatory minimum of § 2251. He timely appealed.

## II.

We review the district court's denial of a motion for judgment of acquittal *de novo*.[6] Evidence supporting a conviction is sufficient if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.[7] "In assessing the sufficiency of evidence, we do not evaluate the weight of the evidence or the credibility of witnesses, but view the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict."[8]

The standard of review for lasciviousness determinations requires additional explanation, as our sister courts of appeal are split on the issue. The Third, Eighth, and Tenth Circuits have held that the decision of whether an image is lascivious requires *de novo* review because it involves a legal standard.[9]

---

[6] *See United States v. Delgado*, 256 F.3d 264, 273 (5th Cir. 2001).

[7] *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Mann*, 493 F.3d 484, 492 (5th Cir. 2007).

[8] *Delgado*, 256 F.3d at 273–74; *see also United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir. 1998) ("If the evidence tends to give equal or nearly equal circumstantial support to guilt and to innocence . . . reversal is required . . . ." (internal quotation marks omitted)).

[9] *United States v. Helton*, 302 F. App'x 842, 846 (10th Cir. 2008) (unpublished) (finding that the question of lasciviousness is a mixed question of fact and law that primarily involves consideration of legal principles); *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001) ("Of

(continued...)

No. 10-50114

The Ninth Circuit calls for clear error review, noting that a district court's findings of lasciviousness should be upheld unless the appellate court has a "definite and firm conviction that a mistake has been committed."[10] Our own court has never stated a standard of review for lasciviousness in a case that challenged the sufficiency of the evidence. However, two sentencing cases in our circuit have applied a clear error standard to a district court's lasciviousness determination.[11] Following this precedent, we likewise apply the clear error standard to the jury's conviction so far as it indicates a factual finding that the image was a lascivious exhibition of the genitals.

III.

Section 2251(a) makes it unlawful to "use" a minor "to engage in . . . sexually explicit conduct" for the purpose of producing a visual depiction of that conduct.[12] In assessing conduct under § 2251(a), we ask "two questions: Did the

---

[9](...continued)
course, the question whether materials depict 'lascivious exhibition of the genitals,' an element of the crime, is for the finder of fact. . . . However, the meaning of 'lascivious exhibition of the genitals' is an issue of law."); *United States v. Knox*, 32 F.3d 733, 744 (3d Cir. 1994) ("Because the meaning of the statutory phrase 'lascivious exhibition' . . . poses a pure question of law, our review is plenary.").

[10] *United States v. Overton*, 573 F.3d 679, 688 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)).

[11] *United States v. Boudreau*, 250 F.3d 279, 282 (5th Cir. 2001); *United States v. Carroll*, 190 F.3d 290, 293 (5th Cir. 1999), *vacated in part, reinstated in relevant part by* 227 F.3d 486, 488 (5th Cir. 2000) (per curiam).

[12]The statute also makes it unlawful for a person to use a minor to *assist* another person in engaging in sexually explicit conduct for the purpose of producing a visual depiction of that conduct. 18 U.S.C. § 2251(a). The Government does not contend that this portion of the statute is relevant here.

No. 10-50114

production involve the use of a minor engaging in sexually explicit conduct, and was the visual depiction a depiction of such conduct?"[13]  Steen clearly used C.B. for the purposes of producing a nude video, but the statute requires more—the film must depict sexually explicit conduct.[14]  Accordingly, this court has found, "a child could be used in the production of a photograph, but the image in the ultimate photograph could be one that did not capture the child engaging in sexually explicit conduct.  If this were so, a defendant might be charged under a different statute—perhaps child molestation—but not child pornography."[15]

Here, the parties focused on whether the video was a "lascivious exhibition" of C.B.'s genitals or pubic area.  The jury instructions included a description of the six factors first proposed in *United States v. Dost*[16] that have been applied in this circuit to assess lasciviousness.[17]  These factors are:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

---

[13]*United States v. Grimes*, 244 F.3d 375, 380 (5th Cir. 2001).

[14]18 U.S.C. § 2251(a); *see also Faloona v. Hustler Magazine, Inc.*, 607 F. Supp. 1341, 1355 n.44 (N.D. Tex. 1985) ("The nude pictures of the plaintiffs are not 'child pornography' because they do not show the plaintiffs engaged in any sexual acts.").  A minor may, however, be "used" to engage in sexually explicit conduct without his or her knowledge—for example, if the minor was drugged or sleeping while being filmed.  Nevertheless, the image captured must still display sexually explicit conduct in order to be considered child pornography.

[15]*Grimes*, 244 F.3d at 380 n.11.

[16]636 F. Supp. 828 (S.D. Cal. 1986), *aff'd* 813 F.2d 1231 (9th Cir. 1987) (unpublished table decision).

[17]*See Grimes*, 244 F.3d at 380 (citing *Carroll*, 190 F.3d at 297).

No. 10-50114

4) whether the child is fully or partially clothed, or nude;
5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.[18]

This list, however, "is not exhaustive, and no single factor is dispositive."[19] Any determination of lasciviousness "will have to be made based on the overall content of the visual depiction."[20] Moreover, we note that these factors have never been deployed where a defendant's conduct said to be criminal under the statute at issue proved to be no more than voyeurism.

In considering the *Dost* factors and the statutory text, we find that the evidence was insufficient to find a lascivious exhibition of the genitals. First, the focal point of the visual depiction is not on C.B.'s genitalia or pubic area. Her pubic region is only visible for about 1.5 seconds.[21] Moreover, the film did not accent the pubic area—to the contrary, the brief seconds the pubic region is visible, it is on the far side of the image's frame. The first factor lacks factual support here. It does not point to a finding of lasciviousness.[22]

---

[18]*Dost*, 636 F. Supp. at 832.

[19]*Grimes*, 244 F.3d at 380.

[20]*Dost*, 636 F. Supp. at 832.

[21]*Cf. Helton*, 302 F. App'x at 847 (affirming a conviction based on the first factor because the pubic region was the focus of the video "for over one minute").

[22]*Cf. Boudreau*, 250 F.3d at 283 ("The purposefulness with which S.B. held up his shorts to expose his underwear, the resting of the sitting man's head on S.B.'s thigh next to S.B.'s pubic area, and the standing man's pointing his finger at S.B.'s genital area inescapably demonstrate that S.B.'s pubic area is the picture's focus."); *Carroll*, 190 F.3d at 298 ("Defendants directed [the child] to pose on his side with one knee up to expose his genital or

(continued...)

No. 10-50114

The second and third factors consider whether the setting or pose of the depiction is sexually suggestive or unnatural.[23]  Traditional settings that meet this standard are beds or bedrooms.[24]   A tanning salon is not a sexually suggestive setting, nor are C.B.'s movements unnatural for someone who is tanning.  Because she did not know she was being filmed, she is, of course, acting naturally.  Under certain circumstances, lying on one's back may be sexually suggestive, but that is not the case when the non-sexual activity being displayed requires one to lie on the back.  The fifth factor, suggesting sexual coyness, is irrelevant in this case because C.B. did not know she was being filmed.  She neither acts coy nor willing to engage in sexual activity.

The fourth *Dost* factor is nudity, which Steen's video satisfies since C.B. was fully nude for her tan.  However, the Supreme Court has held that "nudity, without more is protected expression."[25]  Surreptitiously filming a nude tanner, on its own, does not meet the standard for producing child pornography.

The sixth factor is the most difficult to apply—whether the visual

---

[22](...continued)
pubic area."); *see also Overton*, 573 F.3d at 687 ("The child's genitals are in the center of the picture and are thus the focal point of the image."); *United States v. Rivera*, 546 F.3d 245, 250 (2d Cir. 2008) (finding that sexually explicit photographs displayed the child "lying naked on a hotel room bed, his genitals prominent at or about the center of the frame").

[23]We note that these two factors may not be as pertinent to the analysis in this case because Steen was not directing C.B. in the video production.  The voyeuristic nature of the offense limits his ability to control the location and poses.

[24]*See Rivera*, 546 F.3d at 250 (photo on a hotel room bed); *Carroll*, 190 F.3d at 298 (photo on an unmade bed).

[25]*New York v. Ferber*, 458 U.S. 747, 765 n.18; *see also Grimes*, 244 F.3d at 381–82 (noting that to find nudity alone sufficient for child pornography would "outlaw many works of art or family photos of, say, naked children in bathtubs").

8

depiction is intended or designed to elicit a sexual response in the viewer.[26] Here, the primary evidence of intention to elicit a sexual response is that Steen surreptitiously filmed a nude 16-year-old. However, as a Missouri district court held in a similar case:

> These videos could not be considered to have been intended to elicit a sexual response in the viewer any more than mere nudity would, which several courts have concluded is not of a sexual character. We do have some limited context . . . that [the defendant] set up a camera . . . but that context indicates nothing more than an attempt to capture mere nudity and is very different than a person . . . telling a minor to undress, lay on a bed, and open his legs for a nude photo.[27]

Even if one assumes Steen was stirred by his voyeuristic pursuits, there is insufficient evidence to conclude that the image of C.B.'s *genitals* was designed to elicit a sexual response or whether, perhaps, merely being a voyeur excited Steen.[28] When a photographer selects and positions his subjects, it is quite a different matter from the peeking of a voyeur upon an unaware subject pursuing activities unrelated to sex.[29]

We have previously adopted the ordinary meaning of the phrase

---

[26]*See United States v. Amirault*, 173 F.3d 28, 34 (1st Cir. 1999) (describing this factor as "the most confusing and contentious of the *Dost* factors").

[27]*United States v. Johnson*, 719 F. Supp. 2d 1059, 1068 (W.D. Mo. 2010).

[28]A Government witness testified that in addition to footage of K.S. and C.B., Steen's camera contained two other short films from the tanning salon, neither of which contained nudity.

[29]*Cf. Overton*, 573 F.3d at 688–89 (finding that the sixth *Dost* factor is especially relevant when the producer of the image arranged the minor and setting to fit his particular lust and contrasting the value of the factor when a defendant merely possessed illicit materials); *Rivera*, 546 F.3d at 250 ("[The victim] testified that [the defendant] arranged the poses and took the photographs. [The defendant] was responsible for the *mise-en-scène*.").

No. 10-50114

"lascivious exhibition," which we defined as "a depiction which displays or brings forth to view in order to attract notice to the genitals or pubic area of children, in order to excite lustfulness or sexual stimulation in the viewer."[30]  Here, the government's evidence cannot meet this standard.

## IV.

We must conclude that Steen's conduct did not constitute the crime with which he was charged, and the case should not have gone to the jury.  The judgment is REVERSED.

---

[30] *Grimes*, 244 F.3d at 381 (quoting *United States v. Knox*, 32 F.3d 733, 746 (3d Cir. 1994)).

No. 10-50114

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring:

While I agree with the panel opinion, I write separately to note my misgivings about excessive reliance on the judicially created *Dost* factors that continue to pull courts away from the statutory language of 18 U.S.C. § 2251.

There are many reasons to be cautious of the *Dost* factors, several of which other courts have previously identified.[1]  As jurists, we have "every reason to avoid importing unnecessary interpretive conundrums into a statute, especially where the statute employs terms that lay people are perfectly capable of understanding,"[2] such as "lascivious."  The *Dost* factors are not definitionally equivalent to the statutory standard of "lascivious exhibition of the genitals," but many courts have treated them as such, even requiring that a certain number of factors be present for pornography convictions.  As a result, these factors often create more confusion than clarity.

The sixth factor, which asks whether the visual depiction was intended to elicit a sexual response in the viewer, is especially troubling.  Congress did not make production of child pornography turn on whether the maker or viewer of an image was sexually aroused,[3] and this *Dost* factor encourages both judges and

---

[1] *See United States v. Rivera*, 546 F.3d 245, 250–52 (2d Cir. 2008) (describing criticisms of the *Dost* factors from several courts).  *Rivera* cites, among others, the Ninth Circuit, which found the *Dost* factors were "over-generous to the defendant" and the First Circuit, which noted the risk that the factors would "be used to inappropriately limit the scope of the statutory definition."  *United States v. Wiegand*, 812 F.2d 1239, 1239 (9th Cir. 1987); *United States v. Fabrizio*, 459 F.3d 80, 88 (1st Cir. 2006).

[2] *Fabrizio*, 459 F.3d at 88.

[3] *Cf. United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989) ("We must, therefore, look at the photograph, rather than the viewer.  If we were to conclude that the photographs were lascivious merely because [the defendant] found them sexually arousing, we would be engaging
(continued...)

11

No. 10-50114

juries to improperly consider a non-statutory element.  A pedophile may be aroused by photos of children at a bus stop wearing winter coats, but these are not pornographic.   Conversely, a photographer may be guilty of child pornography even though he is not aroused by the photos he produces purely for financial gain.  Regardless of whether the photographer was aroused by the images he produced, to qualify under § 2251, the images must show a minor being used to engage in sexually explicit conduct.

Our court first used the *Dost* factors in *United States v. Carroll.*[4]  In response to a request for rehearing en banc, the *Carroll* decision was altered by the panel, but the section citing the *Dost* factors was reinstated.  In his original panel dissent, Judge Garwood steered away from these factors and noted that § 2251 "unambiguously requires that . . . *the minor* must actually *do something*—'engage in'—*which constitutes* actual or simulated sexually explicit conduct."[5]  In its en banc brief, the Government conceded the statute required that the image show a minor who engaged in sexually explicit conduct:

> After a thorough and searching review of the plain wording of 18 U.S.C. § 2251(a) and the legislative history addressing it at the time it was enacted . . . the government concedes, that a violation of Section 2251(a) requires that the defendant employ, use, persuade, induce, entice or coerce the minor himself to engage in the actual or simulated sexually explicit conduct for the purpose of producing a

---

[3](...continued)
in conclusory bootstrapping rather than the task at hand—a legal analysis of the sufficiency of the evidence of lasciviousness."); *see also United States v. Amirault*, 173 F.3d 28, 34–35 (1st Cir. 1999) (citing *Villard*).

[4]*United States v. Carroll*, 190 F.3d 290, 293 (5th Cir. 1999), *vacated in part, reinstated in relevant part by* 227 F.3d 486, 488 (5th Cir. 2000) (per curiam).

[5]190 F.3d 290, 298–99 (5th Cir. 1999) (Garwood, J., dissenting).

12

No. 10-50114

visual depiction of the *minor's* sexually explicit conduct.[6]

I agree with our panel's opinion today that an unaware minor may be used to produce child pornography, but even so, the statute requires that the image display sexually explicit conduct. The statute does not suggest that the definition of pornography is contingent upon what arouses the defendant, especially if the defendant is aroused by objectively asexual images.

As this court noted in *Grimes*, § 2251 supports a finding that one who inappropriately films a minor for his own sexual pleasure may not be convicted of child pornography unless the images display a minor being used to engage in sexually explicit conduct.[7] The statute's definition of sexually explicit conduct includes a "lascivious exhibition of the genitals or pubic area"—not a lascivious exhibition of winter coats, children's faces, or even breasts, but a lascivious exhibition of the pubic area. The video of C.B. contains no such exhibition. That is the most important "factor" this court should consider because it derives from the statute, not a lonely decision of a district court.

---

[6] 227 F.3d 486, 488 n.2 (5th Cir. 2000), *vacating* 190 F.3d 290 (5th Cir. 1999) (quoting the Government's en banc brief).

[7] *United States v. Grimes*, 244 F.3d 375, 380 (5th Cir. 2001).

13

No. 10-50114

## APPENDIX:  Description of C.B. Video

The entire video is 44 seconds long.  Below is a description of how the video progresses by the seconds.

| | |
|---|---|
| Seconds 1 – 14: | Blurry views of the tanning room and ceiling. |
| Second 15: | Tanning bed comes into view. |
| Seconds 18 – 21: | C.B.'s arm and part of her hair is visible. |
| Second 21: | A more extended part of the C.B.'s back (including her lower back) and long hair may be seen. |
| Seconds 22 – 26: | Blurry view of the ceiling. |
| Second 27 – 34: | C.B. comes into view, and she is bending down toward the ground (and toward the camera).  The video displays her head, back, and top of her buttocks for about two seconds.  She stands up, turning away from the camera and towards the tanning bed; the video does not display any part of the front of her body. |
| Second 35: | C.B. moves out of camera's view (only the tanning bed is visible). |
| Second 37: | C.B. sits into the tanning bed; her hair, stomach, and upper thigh are visible.  Her pubic region is not visible because of how she is seated and the camera angle. |
| Second 38: | The camera moves; C.B. is not visible. |
| Second 39: | C.B. is fully nude lying on her back in the tanning bed. Her breasts are in the center of the shot, and her pubic region is visible on the far right side of the frame.  Her legs are outside the camera's view. |
| Second 40: | The camera is moved, and the view of C.B. is partially obstructed by the wall partition.  Her face is visible, but half of her body is hidden. (Part of her pubic region and left breast are visible for about half of a second.) |
| Second 41: | C.B. closes the tanning bed and can no longer be seen. |
| Seconds 42 – 44: | Blurry view of the ceiling. |